UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH J. WOODSIDE,

Plaintiff,

v.

THE BOARD OF REGENTS OF
THE UNIVERSITY OF
MICHIGAN, et al.,

Defendants.

Case No. 25-10002
Honorable Shalina D. Kumar
Magistrate Judge Curtis Ivy, Jr.

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 6)**

---

## I.     Introduction

Plaintiff, Kenneth Woodside ("Woodside"), formerly a transplant surgeon at the University of Michigan Hospital (the "Hospital"), sues defendant Board of Regents for University of Michigan (the "University") and two individual defendants, Justin Dimick ("Dimick"), the chair of the Hospital's surgery department, and Christopher Sonnenday ("Sonnenday"), the associate chair for the transplant surgery department, for violations of his Fourteenth Amendment due process rights. ECF No. 1. Woodside also asserts several state claims against defendants. Defendants move to dismiss Woodside's claims against them. ECF No. 6. That motion is fully

Page **1** of **21**

briefed, ECF Nos. 6, 8, 10, and the Court heard oral argument from the parties on November 12, 2025. For the reasons discussed below, the Court grants defendants' motion to dismiss.

## II.    Factual Background

According to the allegations in the complaint, Woodside was a leading transplant surgeon at the Hospital, which is owned and operated by the University, until September 2022. ECF No. 1. In early 2020, Woodside was accused of assault and battery of another Hospital employee who worked in the dialysis unit. Woodside denied this allegation, and believes it was leveled in retaliation for his report of patient safety issues he observed in that unit. The University investigated the complaint and determined that the evidence did not support the conclusion that Woodside engaged in conduct that constituted a violation of its sexual harassment policy.

Nevertheless, Woodside was criminally charged and convicted of assault and battery after a jury trial in December 2021. Though his appeal of that conviction continues, he was released early from his sentence of one year of probation. Despite assurances from Dimick and University Executive Vice Dean Brian Zink that he would continue to have a job regardless of the outcome of the criminal proceedings because they understood the charge's

connection to Woodside's whistle blowing report on the dialysis unit, the University notified Woodside on January 3, 2022 that his appointment would not be renewed and would end on September 30, 2022. The University also placed him on immediate administrative leave, preventing him from performing clinical, research, and teaching activities. ECF No. 1, PageID.5, ¶ ¶ 24-25.

Woodside alleges that Sonnenday contacted hospitals, organizations, and universities with whom Woodside was interviewing to "express concerns" about Woodside, thus undermining his professional reputation and his ability to secure a new position. Specifically, Woodside alleges that Sonnenday thwarted his application for a position with the transplant center at Johns Hopkins University. Woodside claims he was told he was a good candidate for the position after a favorable interview, but after the head of surgery for Johns Hopkins spoke to Sonnenday, Woodside was told that "there was no interest after that call." *Id*. at PageID.11, ¶ ¶ 57-61.

Woodside asserts that the defendants' actions violated his right to due process under the Fourteenth Amendment. Specifically, he alleges that he had a constitutionally protected interest in his faculty and hospital employment positions. *Id*. at PageID.14, ¶ 75. He also alleges that he has a

constitutionally protected liberty interest in his good name and reputation. *Id*. at ¶ 76. Woodside asserts that "[d]efendants' arbitrary and capricious decision to deprive [him] of these interests without adequate process of law" amounts to a due process violation. *Id*. at ¶ 80. Woodside also asserts state claims of false light and public disclosure of private facts against Sonnenday, and tortious interference with a business expectancy and intentional infliction of emotional distress ("IIED") against Sonnenday and Dimick.[1] *Id*. at PageID.19-24.

Defendants move to dismiss on myriad grounds, namely that the University and individual defendants in their official capacities are entitled to dismissal because they are not persons under 42 U.S.C. § 1983, and that the individual defendants in their individual capacities are entitled to dismissal under qualified immunity. They further request the Court decline to exercise supplemental jurisdiction over Woodside's state claims. *See generally* ECF No. 6.

### III. Analysis

#### A.    Standard of Review

---

[1] Plaintiff stipulated to the dismissal of his state claims for breach of contract and violation of the Elliot-Larsen Civil Rights Act, M.C.L. 37.2201 et seq., (Counts II and III). ECF No. 9.

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts that, taken as true, state a plausible claim for relief." *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (internal citations and quotation marks omitted); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024).

The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. "[P]lausibility occupies that wide space between possibility and probability." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal marks omitted). Plausibility is achieved when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, a court must "draw on its judicial experience and common sense." *See id*. at 679.

### B.   Defendants' Immunity Arguments

Defendants argue that they are immune from Woodside's suit. The University avers that this Court lacks jurisdiction because it "is cloaked with sovereign immunity" under the Eleventh Amendment that "has not been waived." The Eleventh Amendment allows suits against state officials in their official capacity[2] for prospective injunctive or declaratory relief—known

---

[2] The Court questions whether Woodside sues the individual defendants in their official capacities, *see* ECF No. 1 (Woodside sues Dimick and Sonnenday in their "personal" capacities), but will assume that he could amend his complaint to assert official capacity claims against them.

as an *Ex Parte Young*[3] claim, but such a claim is thwarted if the plaintiff fails to state a claim for any constitutional deprivation. *See Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021).

The individual defendants also assert immunity from Woodside's action under the qualified immunity doctrine. ECF No. 6. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Public officials are immune from suit unless they: (1) commit a constitutional violation; and (2) the constitutional right violated was "'clearly established'" when the incident occurred. *See Martin v. Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson*, 555 U.S. at 232). Plaintiffs must satisfy both prongs "for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights. If either prong is not satisfied, qualified immunity will shield the officer from civil damages." *Id.* (citing *Pearson*, 555 U.S. at 236).

---

[3] Derived from *Ex Parte Young*, 209 U.S. 123 (1908).

Because the adequacy of Woodside's alleged due process violation claim is subsumed within and dispositive of both of defendants' immunity arguments, the Court addresses it first.[4]

### C.   Due Process

The Fourteenth Amendment protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process has not only a procedural component but a substantive one as well. *Golf Village N., LLC v. City of Powell (Golf Vill. II)*, 42 F.4th 593, 598 (6th Cir. 2022). Procedural due process ensures that "the government provide 'fair procedure' when depriving someone of life, liberty, or property." *Id*. (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). "By contrast, substantive due process protects against

---

[4] Although sovereign immunity is a jurisdictional defect which, once raised, must be decided before the merits, "if a state does not invoke sovereign immunity as a threshold defense," the Court "may address the sovereign immunity defense and the merits in whichever order [it] prefer[s]." *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) (citing *Nair v. Oakland Cnty. Mental Health Auth.*, 443 F.3d 469, 476–77 (6th Cir. 2006)). "[A] state that raises sovereign immunity as an alternative ground for dismissal," as defendants did here, "is not invoking sovereign immunity as a threshold defense." *Id*. The Court thus exercises its discretion to resolve this case on the merits because doing so is more straightforward than addressing the sovereign immunity issue. *See id*.

government actions that are 'arbitrary and capricious' even if there are adequate procedural safeguards." *Id*. (quoting *EJS Props.*, 698 F.3d at 855). In both cases, a plaintiff must show that: (1) he has a constitutionally protected interest; and (2) the state in some way deprived him of that interest. *Id*.

### 1. Procedural Due Process

To establish a claim for a procedural due process violation, a plaintiff must demonstrate that: (1) he had a constitutionally protected property or liberty interest; (2) he was deprived of a protected interest; and (3) the deprivation occurred without adequate procedural protections. *Id*. (citing *Paterek v. Vill. of Armada*, 801 F.3d 630, 649 (6th Cir. 2015)). Woodside's procedural due process claim fails at step one because neither his property interest in continued appointment to his Hospital and University positions, nor his liberty interest in his good name and reputation is constitutionally protected.

### a. Protected Property Interests

Property interests are not created by the Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, whether a person has a protected property interest is traditionally a question of state

law. *EJS Props*, 698 F.3d at 855. "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances, as well as mutual understandings between the parties." *Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023) (cleaned up). But to establish a property interest, a plaintiff "must have more than a unilateral expectation of it;" instead, he must "have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577; *see also Peterson*, 87 F.4th at 836.

The Supreme Court "has held that a public college professor dismissed from an office held under tenure provisions, and college professors and staff members dismissed during the terms of their contracts, have interests in continued employment that are safeguarded by due process." *Roth*, 408 U.S. at 576–77 (internal citations omitted). Also "[i]n the context of university employment, the Supreme Court has held that 'rules and understandings, promulgated and fostered by state officials' can form the foundation of a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972)); *see also Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir.1989) (employer's custom and practice can form the basis for a protected property interest).

Woodside's complaint does not allege that he held a tenured position with the Hospital or University. *See* ECF No. 1. Nor does Woodside allege that he was terminated during the term of his appointment or employment contract. To the contrary, he alleges that the University informed him in January 2022 that his appointment would not be renewed and would end at the conclusion of his current contract, September 30, 2022. ECF No. 1, PageID.5, ¶ 24. He does not allege that the terms of his contract provide a protected property interest in ongoing employment beyond the expiration of the then-existing appointment. Nor does he allege the existence of any published University or Hospital policy or plead any facts to suggest a University or Hospital custom or practice that would imply a right to employment beyond the expiration of the existing appointment.

Woodside alleges that defendants placed him on immediate "administrative leave" and that he would not be allowed to perform clinical, research, or teaching activities. *Id*., at ¶ 25. Notably, he does not allege that he lost pay or benefits during his administrative leave. As alleged, Woodside's suspension does not support a due process claim.

Adverse employment decisions short of termination, such as a suspension, can raise procedural-due-process questions. *See Peterson*, 87

F.4th at 837 (citing *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552–53 (6th Cir. 2017)) But, "to establish a property interest in this context, there must be a substantial, tangible harm and a material change to an employee's status." *Id*. (internal quotation omitted). Courts have routinely held that, without lost pay or material benefits, an adverse employment action does not deprive a public employee of a constitutionally protected property interest. *See id*. (citing *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) and *Gunasekera*, 551 F.3d at 468); *see also Kaplan*, 10 F.4th at 580–81 n.3 (practice of suspending employees with pay minimizes due process issues).

Additionally, a physician's clinical privileges at a hospital do not independently give rise to a protected property interest. *See, e.g., Patil v. Bd. of Regents of Univ. of Mich.*, 2024 WL 1444036, at *3-4 (E.D. Mich. Jan. 18, 2024) (medical staff bylaws do not create a contractual relationship and thus do not give rise to a protected property interest in clinical privileges); *Doe v. Bd. of Regents of Univ. of Mich.*, 2022 WL 18860462, at *5-6 (E.D. Mich. June 16, 2022) (same).

Both *Patil* and *Doe* concerned physicians suing a university hospital for violating their due process rights by depriving them of their clinical privileges. *See Patil*, 2024 WL 1444036, at *3-4; *Doe*, 2022 WL 18860462, at *15-16. Doe, relying on *Gunasekera*, argued that the university hospital's "medical staff bylaws" combined with the "customs and traditions" at the hospital created a property interest in clinical privileges for a tenured faculty member. *Doe*, 2022 WL 18860462, at *5. The *Doe* court correctly distinguished the facts before it from those presented in *Gunasekera*. *Id*.

The plaintiff physician in *Gunasekera* pleaded that his "Graduate Faculty" status was an intrinsic right to his tenured professorship if he met certain university-defined criteria, and that as such, he had a protected property interest in that status. *Id*. (citing *Gunasekera*, 551 F.3d at 467–68). The Sixth Circuit agreed, finding "'that an employer's custom and practice can form the basis for a protected property interest'" and noting that "a public institution taking an unprecedented action against an employee can support a party's 'custom and practice' argument in support of a protected property interest." *Id*. (quoting *Gunasekera*, 551 F.3d at 468). The *Gunasekera* court found that the university had no precedent for suspending or revoking a tenured professor's Graduate Faculty status, and

that plaintiff had sufficiently pleaded an employer custom and practice basis to plausibly allege that the Graduate Faculty status was a protected property interest. *Gunasekera*, 551 F.3d at 468.

In contrast, Doe's complaint alleged no criteria to support a hospital "custom and practice" argument for clinical privileges, nor did he plead a lack of precedent for the university suspending an employee's clinical privileges. *Doe*, 2022 WL 18860462, at *5. On this basis, the *Doe* court found that the plaintiff had failed to allege a cognizable claim that the university's customs and practices gave plaintiff a protected property interest in his clinical privileges. *Id*. at *5-6.

Similarly, both *Doe* and *Patil* rejected plaintiff-physicians' argument that the university hospital's medical staff bylaws provided them with a protected property interest in their medical-staff privileges. *Id.*; *Patil*, 2024 WL 1444036, at *3-4. Both courts recognized that Michigan law does not construe medical staff bylaws to create a contractual relationship and thus are not sufficient to evoke due process protections. *See Doe*, 2022 WL 18860462, at *5-6; *Patil*, 2024 WL 1444036, at *3-4 (both citing *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 448 (6th Cir. 2014) (finding that

lack of consideration and the hospital's ability to amend such bylaws at any time preclude them from being considered contractual)).

Woodside argues he has adequately alleged a protected property interest because he asserts in the complaint that: defendants "maintained written policies, codes, and bylaws that establish procedures for, and require adequate cause for, adverse actions against professors and staff, and a practice of not terminating appointments without good or just cause." ECF No. 1, PageID.18, ¶ 98.[5]  As noted above, Woodside does not allege that his appointment was terminated. Rather he alleges his expiring appointment was not renewed. Further, even if he had alleged that bylaws or hospital practice prevented the non-renewal of appointments absent good or just cause, without more, i.e., allegations addressing specific criteria for appointment renewal or a lack of precedent for non-renewal, *see Doe*, 2022 WL 18860462, at *5-6; *Patil*, 2024 WL 1444036, at *3-4, Woodside's complaint would fail to state the requisite protected property interest for a viable due process claim.

---

[5] This allegation is contained within Count III of the complaint, which Woodside stipulated to dismiss. Accordingly, even if this allegation sufficiently stated a basis for a protected property interest, which, as discussed, it does not, Woodside would need to amend his complaint to reallege this contention. ECF No. 1, PageID.18.

Woodside points to *Frost v. University of Louisville* to support his argument that he had protected property interest in his continued employment through September 2022 and in the renewal of his appointment beyond the September 30, 2022 expiration date. 392 F. Supp. 3d 793, 802–04 (W.D. Ky. 2019). Like Woodside, the plaintiff in *Frost* was notified by a letter from the defendant university that his annually-renewable position was not to be renewed for the following academic year. Frost was notified in January 2019 that he would be terminated effective June 30, 2019, the expiration date of his annual appointment. *See id*. at 830. Also like Woodside, Frost was placed on immediate administrative leave and relieved of his academic responsibilities and duties through the date of his termination. *Id*.

Notably, the *Frost* court did not consider whether Frost had a protected property interest in his continued employment as part of a motion to dismiss. Rather, the issue was before it on a motion for preliminary injunction. 392 F. Supp. 3d at 795–96. Accordingly, the *Frost* court had the benefit of the undisputed, relevant facts (by way of party stipulation) in finding that a mutually explicit understanding between Frost and the university supported Frost's protected property interest in both his 2018-

Page **16** of **21**

2019 and 2019-2020 employment terms. *Id*. at 796, 804. The *Frost* court did not address the adequacy of the complaint's allegations. *See id*.

Nevertheless, Woodside's claims, as alleged, are distinguishable from the claims the *Frost* court considered. First, the Court notes that Frost's position was as a tenure-track associate professor. But more importantly, Frost's employment was subject to the university's governance document known as the Redbook. Under the terms of the Redbook, probationary academic appointments such as Frost's allowed the university to not renew an expiring appointment provided it gave the employee notice of non-renewal 12 months before the expiration of the appointment. *Id*. at 802. A separate provision permitted termination of employment before the end of the appointment's term but only for incompetence, neglect of or refusal to perform duties, or immoral conduct which substantially impaired the faculty member's effectiveness. *Id*.

The *Frost* court determined that the plaintiff had a protected property interest in continued employment through the 2019-2020 academic year because the university did not notify him of non-renewal until January 2019, more than six months too late to effectively non-renew for the 2019-2020 year under the mutually explicit understanding provided by the Redbook.

Additionally, because the *Frost* termination and suspension letter referenced that the termination was made pursuant to the Redbook provision relating to termination for neglect or refusal to perform duties and/or immoral conduct, the Court concluded that the suspension was really a termination for cause thereby necessitating process. *Id*. at 803.

In contrast, Woodside does not allege his position was tenured or tenure-track. The complaint does not reference any specific applicable University or Hospital policy regarding renewable appointments. Nor does it allege that the University's notice of non-renewal was untimely. Finally, he does not allege that the notification of non-renewal indicated a reason for the non-renewal of his appointment. In short, the Court finds *Frost* inapposite first because it does not address the adequacy of the allegations to state a protected property interest, and second, because the factors upon which the *Frost* court relied in finding a protected property interest have not been alleged here.

In summation, Woodside has not alleged factual circumstances that would support a claim to a protected property interest in either his suspended duties or in a renewed appointment.

b. Protected Liberty Interests

Page **18** of **21**

Woodside's claim of a protected liberty interest fares no better. "A person's reputation, good name, honor, and integrity" are constitutionally protected liberty interests. *Kaplan*, 10 F.4th at 584 (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)). A plaintiff:

> must plead five elements to state a claim for deprivation of his liberty interest in his reputation: "First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary."

*Id*. (quoting *Quinn*, 293 F.3d at 320). If a "plaintiff pleads these elements, he is entitled to a name-clearing hearing upon request." *Id*. However, a "plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Id*. (quoting *Quinn*, 239 F.3d at 323). The denial of a requested name-clearing hearing, not the elements that entitle the plaintiff to such a hearing, deprives the plaintiff of his liberty interest without due process. *Id*.

Woodside does not allege that he requested a name-clearing hearing. *See* ECF No. 1. Accordingly, Woodside has not sufficiently pleaded a protected liberty interest.

Page **19** of **21**

### 2.  Substantive Due Process

As with a procedural due process claim, a substantive due process claim requires a plaintiff show that he has a constitutionally protected interest and that he was deprived of that interest through arbitrary and capricious government action. *Golf Vill. II*, 42 F.4th at 601. Because, as discussed above, Woodside has failed to allege either a protected property or a protected liberty interest, his substantive due process claim fails as well.

### D.  State Claims

With the dismissal of Woodside's lone federal claim, the Court will use its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(2); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1976) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

### IV.   Conclusion

For the reasons discussed, the Court **GRANTS** defendants' motion to dismiss (ECF No. 6). Plaintiff's state claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an amended complaint to remedy the

deficiency of his federal claim by **December 31, 2025**. If plaintiff does not

file an amended complaint by that date, his case will be **DISMISSED**

**WITHOUT PREJUDICE**.

<u>s/ Shalina D. Kumar</u>
SHALINA D. KUMAR
Dated: December 18, 2025          United States District Judge